USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/1/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Francisco Rosado,

                Plaintiff,

        –v–

City of New York, *et al.*,

                Defendants.

---

18-CV-9760 (AJN)

MEMORANDUM
AND ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Francisco Rosado brings this action against Defendants City of New York ("the City"), Thomas Galati, Howard Redmond, Karl Pfeffer alleging employment discrimination on the basis of national origin and age. Rosado asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Age Discrimination in Employment Act ("ADEA") and Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 621, *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, *et seq.* Now before the Court is Defendants' motion to dismiss this action in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 35. For the reasons articulated below, Defendants' motion to dismiss is granted with respect all federal claims. The Court declines supplemental jurisdiction over the remaining state and local claims.

## I.    BACKGROUND

The following facts are drawn from the Complaint and assumed to be true for purposes of this motion to dismiss.

Plaintiff Rosado, a Hispanic male, joined the New York City Police Department in 1993. First Amended Complaint ("FAC"), Dkt. No. 34, ¶ 38.  In 2006, he was promoted to Lieutenant. *Id.* ¶ 40.  Over the next several years, Plaintiff received what he describes as "de facto" promotions that involved greater responsibilities but not an increase in rank or pay.  *Id.* ¶¶ 63-73. Then in September of 2013, Plaintiff was transferred to the NYPD's Executive Protection Unit ("EPU").  *Id.* ¶ 42.  The principal mission of the EPU is to protect the Mayor and his family.  *Id.*

Plaintiff then alleges that he began to suffer discriminatory treatment when Defendant Redmond became the Commanding Officer of the EPU.  *Id.* ¶¶ 80-81.   In January of 2014, Plaintiff alleges that, at Redmond's direction, he was replaced by Defendant Karl Pfeffer, another Lieutenant, as EPU supervisor, and subsequently reassigned to the post of Gracie Mansion Security Coordinator.  *Id.* ¶¶ 47, 84.  Plaintiff alleges that Pfeffer, who is not Hispanic, had been part of EPU for a little under two weeks at this point in time.  *Id.* ¶ 47.  He further alleges that Pfeffer's new role gave Pfeffer an advantage for future promotional opportunities, although he does not explain how.  *Id.*  ¶¶ 47, 87.  Plaintiff alleges that Redmond then ceased assigning him to the Mayor's traveling security detail.  *Id.* ¶ 83.  In October of 2014, Plaintiff alleges that Redmond replaced him as Gracie Mansion Security Coordinator with a non-Hispanic Sergeant and reassigned him to Supervisor of the EPU Family Protection detail/unit, which Plaintiff claims, without explanation, was "effectively" a demotion.  *Id.* ¶¶ 85-86.  He was later restored to the Gracie Mansion Security Coordinator position in February of 2017.  *Id.* ¶ 89.

Plaintiff also claims that he was not promoted to Lieutenant Commander within a timely manner and that this was a product of age and national origin discrimination.  He alleges that the promotion process for supervisory officers in the NYPD is highly unstructured and opaque.  *See id.* ¶¶ 56-61.  According to the FAC, promotion decisions are "purely discretionary" and were

made by a handful of "Section Heads" such as Redmond. *Id.* ¶ 56. There is allegedly no advance notice of when promotion decisions for Intelligence Bureau Lieutenants are going to be made. *Id.* ¶ 58. Furthermore, according to the FAC, "[c]andidates for promotion are not told how many vacancies there are, who else they are competing against, or what criteria will be used to decide promotions." *Id.* ¶ 59. However, promotions within the Lieutenant grades are publicly announced after the promotion decision is made and sent out throughout the NYPD. *Id.* ¶ 32. Plaintiff alleges that out of the three Hispanic Lieutenants to serve in the EPU in the last fifteen years, he is the only one to have been promoted while in the unit. *Id.* ¶ 62.

In January of 2015, Plaintiff alleges that Pfeffer, who was at the time the only other Lieutenant in the EPU, was promoted to Lieutenant Commander. *Id.* ¶¶ 87, 94. This was so even though Pfeffer had less executive protection experience and time spent in the EPU than Plaintiff. *Id.* ¶ 87. Plaintiff alleges that Pfeffer had benefitted from being EPU Supervisor, although he does not explain why. *Id.* The Lieutenant Commander position allegedly has superior pay and benefits compared to the Lieutenant position. *Id.* ¶¶ 29-30.

Several years later, in January of 2018, Plaintiff allegedly emailed Thomas Galati, Redmond's supervisor, about the fact that he had never been promoted, and stated that the only reason this could be was due to the fact that he was Hispanic, and Puerto Rican specifically. *Id.* ¶ 91. Galati allegedly responded that he did not know why Redmond had never recommended Plaintiff for a promotion. *Id.* ¶ 92. Four months later, in May of 2018, and after filing an EEOC complaint, Plaintiff was promoted to Lieutenant Commander. *Id.* ¶ 107.

Plaintiff alleges that Redmond discriminated against him in other ways. Plaintiff also alleges that when he was Gracie Mansion Security Coordinator, Redmond overstaffed Gracie Mansion with an unnecessary number of sergeants. *Id.* ¶ 49. Redmond also allegedly failed to

ask Plaintiff's advice about promoting officers under Plaintiff and excluded him from special federal trainings, even though younger, non-Hispanic officers were given these opportunities. *Id.* ¶¶ 50-51. Redmond further allegedly rejected Plaintiff's officers to fill-in supervisory coverage of the Mayor's detail during periods when it was short staffed. *Id.* ¶ 53.

Finally, in December of 2018, Plaintiff was transferred from the EPU to the Threat Assessment and Protection Unit assigned to the Trump Tower Protection Unit. *Id.* ¶ 111. Plaintiff alleges that around the same time, several EPU detectives who were not Hispanic but did have other employment discrimination lawsuits were transferred to a unit that protected Congressman Jerrold Nadler. *Id.* ¶¶ 116-18. He alleges that he was told that the transfer was not due to his performance. *Id.* ¶ 112. He further claims that he was the first Lieutenant to ever be assigned to this unit, "effectively demoting" him to a position for which he is over-qualified. *Id.* ¶ 113. Additionally, Plaintiff claims that his seniority within this new unit is lower than his seniority within the EPU, reducing that chance that he would be promoted. *Id.* ¶ 114.

## II.   LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

While "the statute of limitations is ordinarily an affirmative defense that must be raised in the answer" it may nevertheless "be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). When evaluating 12(b)(6) motions based on the statute of limitations, the Court must continue to "assume [Plaintiffs] factual allegations are true" and apply the plausibility standard announced in *Twombly* and *Iqbal*. *Luv N' Care, Ltd. v. Shiboleth LLP*, No. 16-cv-3179, 2017 U.S. Dist. LEXIS 128060, at *15 (S.D.N.Y. Aug. 8, 2017).

## III.   DISCUSSION

### A.   Plaintiff Has Failed to Exhaust Administrative Remedies for his ADEA Claim and Disparate Impact Title VII Claim

To bring a Title VII or ADEA claim, a plaintiff must first exhaust administrative remedies. As part of this requirement, "[c]ourts may only hear claims 'reasonably related' to allegations set forth in the administrative complaint." *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 71 (2d Cir. 2015) (quoting *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir. 1980)). A claim is reasonably related "if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001) (quotation omitted). Defendants contend that Plaintiff failed to exhaust his administrative remedies for his ADEA claim and Title VII disparate impact claim. The Court agrees on both counts.

Plaintiff does not respond to the contention that he failed to exhaust his ADEA/OWBPA claim. The Court therefore treats these claims as abandoned and dismisses them with prejudice. *See Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018). Moreover, Plaintiff

has clearly failed to exhaust on these claims: his EEOC charge makes no mention of age

discrimination.  *See Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 353 (E.D.N.Y. 2013).

Plaintiff has also failed to exhaust on his Title VII disparate impact claim.  His EEOC

charge does not reference a broader policy but is instead focused only on alleged discrimination

against himself.  Plaintiff's "complaints of individualized disparate treatment are not reasonably

related to a Title VII disparate impact claim."  *Burgis*, 798 F.3d at 71.  These claims are therefore

dismissed.

### B.      Plaintiff's Claims Against the Individual Defendants Under Title VII Are Dismissed as Abandoned

Plaintiff fails to respond to Defendants' contentions that there is no individual liability

under Title VII.   These claims are therefore also dismissed as abandoned.  *See Felix*, 344 F.

Supp. 3d at 654.

### C.      Plaintiff's Title VII Discrimination Claims Are Partially Time-Barred

To pursue a Title VII discrimination claim, "a plaintiff must file administrative charges

with the EEOC within 300 days of the alleged discriminatory acts."  *Flaherty v. Metromail

Corp.*, 235 F.3d 133, 136 n.1 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-5(e)(1)).  Plaintiff alleges

that he filed his EEOC charge on April 13, 2018.  *See* FAC ¶ 5.  That would mean that any Title

VII claims that accrued before June 17, 2017 are time-barred.  This includes Title VII

discrimination claims relating to his re-assignment from EPU Supervisor to Gracie Mansion

Security Coordinator and from Gracie Mansion Coordinator to Supervisor of the EPU Family

Protection Detail/Unit, both of which occurred in 2014.  It also includes any failure to promote or

delayed promotion claims which accrued prior to June 17, 2017.  Even when a promotion

process is as opaque as the one in this case, these alleged promotion decisions are discrete acts,

and are not subject to the continuing violations doctrine.  *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 142, 156-57 (2d Cir. 2012).

### D.       Plaintiff's Remaining Title VII Discrimination Claims Fail

"[I]n a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *see also Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d 2015) ("[W]hat must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.").  To satisfy this second element at the motion to dismiss stage, a plaintiff need only allege facts that "give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn*, 795 F.3d at 311.  Plaintiff argues that his reassignments within the EPU and his allegedly delayed promotion qualify as adverse employment actions.  As explained above, the Title VII discrimination claims arising out of his reassignments within the EPU are time-barred.

That leaves Plaintiff's delayed promotion claim.  Plaintiff does not allege that he ever specifically applied for promotion to Lieutenant Commander.  To support a promotion-related Title VII discrimination claim, a plaintiff must usually "allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion."  *Brown v. Coach Stores*, 163 F.3d 706, 710 (2d Cir. 1998).  The purpose of this requirement is to "ensure[] that, at the very least, the plaintiff employee alleges a particular adverse employment action" and to prevent "employers [from] be[ing] unfairly burdened in their promotion efforts" by inferring

discrimination from promotion decisions where the plaintiff had not even applied.  *Id.*; *see Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004) (noting that factual inquiries would be too "speculat[ive]" without a specific application requirement).

Plaintiff counters that he was never given a specific opportunity to apply for a promotion. *See* Memorandum of Law in Opposition, Dkt. No. 39, at 18.  The specific job application requirement may be relaxed if "the plaintiff indicated to the employer an interest in being promoted to a particular class of positions, but was unaware of specific available positions" because there was no opportunity to apply for them.  *Mauro v. S. New Eng. Telecomms., Inc.*, 208 F.3d 384, 387 (2d Cir. 2000) (per curiam); *see also Petrosino*, 385 F.3d at 227-28; *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 129 (2d Cir. 2004).  Here, the only allegation that Plaintiff expressed even general interest in a promotion to Lieutenant Commander was his January 2018 email to Intelligence Bureau Chief Thomas Galati, where he claimed that he had not received a promotion because of his Hispanic ethnicity and Puerto Rican national origin.  *See* FAC ¶ 91.  Drawing all inferences in favor of the Plaintiff, the January 2018 email could be viewed as an expression of general interest in a promotion going forward.  *See Dietrich v. City of New York*, No. 18-cv-7544, 2019 U.S. Dist. LEXIS 84566, at *22-*23 (S.D.N.Y. May 16, 2019).

Assuming Plaintiff was qualified for the promotion, the question is then whether the four-month delay, from when he requested the promotion in January 2018 to when he received it in May 2018, qualifies as a material adverse employment action; and, if so, whether Plaintiff alleges facts that give plausible support to a minimal inference that the delay was caused by discrimination.   The Second Circuit has described an adverse employment action for Title VII purposes as "a materially adverse change in the terms and conditions of employment."  *Vega*, 801 F.3d at 85 (quotation omitted).  It must be "more disruptive than a mere inconvenience or an

alteration of job responsibilities." *Id.* (quotation omitted).  Courts in this district appear to be

split on the question of whether, and under what circumstances, a delay in receiving a promotion

qualifies as an adverse employment action under Title VII.  *Compare Fitchett v. City of New*

*York*, No. 18-cv-8144, 2019 U.S. Dist. LEXIS 126749, at *31-*32 (S.D.N.Y. July 30, 2019)

(holding that a delayed promotion can be an adverse employment action); *Tierney v. City of New*

*York*, No. 02-cv-2403, 2007 U.S. Dist. LEXIS 23217, at *69-*71 (S.D.N.Y. Mar. 15, 2017)

(same) *with Jeffrey v. Montefiore Med. Ctr.*, No. 11-cv-6400, 2013 U.S. Dist. LEXIS 141005, at

*56 (S.D.N.Y. Sept. 27, 2013) (holding that "it is a failure to promote, not a failure to quickly

promote that makes an employment action materially adverse"); *Davis v. City Univ. of New*

*York*, No. 94-cv-7277, 1996 U.S. Dist. LEXIS 6345, at *24 (S.D.N.Y. May 8, 1996).  Cases

where courts have found the delay to constitute an employment action have tended to involve

situations where other employees did receive the desired promotion during the relevant period.

*See, e.g.*, *Fitchett*, 2019 U.S. Dist. LEXIS 126749, at *32 (finding it significant that plaintiff had

to wait "10 months after other, less exemplary, non-African American detectives in his unit had

been promoted").  In these cases, the plaintiff not only had to wait for a promotion but was

affirmatively passed over in favor of other employees.

Here, Plaintiff does not allege that anyone else received his desired promotion during the

four-month period at issue.  *See* FAC ¶ 94.  This is so, even though Plaintiff alleges that he was

aware of when other Lieutenants received promotions after the decision was made.  *See* FAC ¶¶

32, 62, 94.  Plaintiff also does not allege that four months is an unusually long time to wait for a

promotion after it is requested.  All of this suggests that Plaintiff's alleged delay in receiving the

Lieutenant Commander position does not qualify as an adverse employment action.

However, the Court need not decide this question: even if it is assumed that the four-month delay is an adverse employment action, Plaintiff fails to plead facts that "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in . . . degrading terms [that are race or national origin-related]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [the adverse employment action]." *Id.* at 312  (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

That Pfeffer was allegedly promoted to Lieutenant Commander position in 2015 cannot supply the inference, because, as explained above, Plaintiff does not allege that he had expressed even general interest in the promotion at that time.  Plaintiff's opposition briefing also argues that detectives received his desired promotion, but the First Amended Complaint lacks any such allegations.

Plaintiff does not appear to argue that other allegations regarding his time in the EPU support a minimal inference that the alleged delay was due to discrimination.  And this conduct seems to be too remote in time and unrelated to the promotion to do so.  But even if this were not the case, this conduct would still nevertheless fail to provide the requisite inference.  Plaintiff's allegations that his 2014 reassignments from EPU Supervisor to Gracie Mansion Security Coordinator and from Gracie Mansion Security Coordinator were "effectively demotions" do not support such an inference because they are entirely bare and conclusory.  *See, e.g.*, FAC ¶ 48 (". . . which, upon information and belief, effectively demoted Plaintiff.").  The few concrete allegations that Plaintiff does provide about his reassignments among different supervisory roles

in the EPU actually undercut the contention that these were effectively demotions.  For example, he alleges that the EPU Supervisor role involved supervising 18 detectives and officers.  FAC ¶ 72.  He alleges that in the Gracie Mansion Security Coordinator role he supervised twenty-one officers.  FAC ¶ 84.  This suggests that moving from the former role to the latter did not involve a diminution of responsibilities.  The fact that the Family Protection supervisory role was previously held by a sergeant does not support the contention that it was a demotion because that was also true of Plaintiff's preferred role of Gracie Mansion Security Coordinator, which was held by a sergeant after Plaintiff left the position.  Even viewing these allegations most favorably to the Plaintiff, they do not support a minimal inference of discrimination.

Plaintiff's First Amended Complaint contains other allegations of mistreatment while he was in the EPU.  Because the discussion section of Plaintiff's opposition does not mention these allegations much less argue that they support a minimal inference of discrimination, it is unclear how they fit in the case.  To the extent that these allegations were intended to provide a minimal inference of discrimination regarding the alleged delayed promotion, they fail to do so.  The fact that Plaintiff believes that he was at times staffed with an unnecessary number of sergeants does not support a minimally discriminatory inference, because he never alleges that similarly situated employees outside of his protected class did not experience the same treatment.  Nor is it clear why this overstaffing, even if duplicative, actually constituted unfavorable treatment.  His allegation that his offers to fill in on the Mayor's detail were rejected also does not support an inference of discrimination because he does not allege that the offers of *similarly situated* officers to fill in on the mayor's detail were accepted or that these officers were outside of his protected class.  *See Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016).

11

Likewise, Plaintiff's allegation that he was not invited to federal trainings also does not support an inference of discrimination, because he once again fails to allege that that the officers who did receive trainings were similarly situated "in all material respects" for purposes of the comparison. *Batiste v. City Univ. of N.Y.*, No. 16-cv-3358, 2017 U.S. Dist. LEXIS 105575, at *23 (S.D.N.Y. July 7, 2017) (quoting *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)). For example, he does not allege that those who were invited were similarly situated with respect to job responsibilities and duties such that the training was similarly relevant and appropriate for both of them. In fact, he does not even allege that other similarly ranked officers in the EPU were invited to the trainings. While Plaintiff alleges that "other [non-Hispanic] NYPD Officers of equal rank and grade" were included, he only alleges that "[non-Hispanic] Detectives and other ranking Officers *within the EPU*" were invited to the trainings. FAC ¶ 51 (emphasis added); *see Littlejohn*, 795 F.3d at 312 (allegations of disparate treatment do not support a minimal inference of discrimination when the comparator employees "worked for different agencies" and "had different jobs"). Finally, Plaintiff's allegation that Redmond consulted similarly ranked supervisory officers for advice on promotions but not Plaintiff is too minor a slight to support an inference that Plaintiff's promotion was delayed for four months because of discrimination. *See Johnson v. City of New York*, No. 18-cv-9600, 2020 U.S. Dist. LEXIS 74524, at *12 (S.D.N.Y. Apr. 28, 2020).

Because Plaintiff's First Amended Complaint fails to supply even a minimal inference that discrimination played a role in the four-month delay in his promotion, his Title VII discrimination claim must be dismissed.

### E.   Plaintiff's Title VII Hostile Work Environment Claim Fails

In order to establish a claim for hostile work environment under Title VII, a plaintiff must show two things. First a plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quotations omitted). Second, a plaintiff must show that "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). Furthermore, "to sustain a [national origin-based] Title VII hostile environment claim," a plaintiff must plausibly alleged that the conduct occurred "because of [his national origin]." *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 440 (2d Cir. 1999).

Aside from recounting the hostile work environment standard, the discussion of Plaintiff's hostile work environment claim in his opposition is as follows:

> Plaintiff's reassignment and constant "de facto" demotions, as alleged in the FAC, have been intentionally designed by Defendants to create a hostile work environment for Plaintiff. These actions show a systematic pattern of continuous and ongoing hostile work environment and discrimination, on the basis of Plaintiff's age and national origin, which is supported by Plaintiff's allegations that non-Hispanic and younger Sergeants/Lieutenants were given his assignments and were not subject to the same adverse treatment.

> Memorandum of Law in Opposition, Dkt. No. 39, at 20.

Based on the references to Sergeants and Lieutenants being given his assignments, Plaintiff appears to be arguing that the 2014 reassignments, although not involving of ridicule or insult, created a hostile work environment. A hostile work environment claim is timely, "[p]rovided that an act contributing to the claim occurs within the filing period." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). The relevant filing period in this case began on June 17, 2017. Therefore, a hostile work environment claim premised solely on

reassignments that occurred in 2014 is untimely.  Furthermore, as noted above, Plaintiff's

allegations that these reassignments constituted de facto demotions are conclusory.

To the extent that Plaintiff meant to refer to his more recent transfer to the Threat

Assessment and Protection Unit, which occurred over four years after his other reassignments,

his claim is not saved.  Plaintiff does not explain why there is at least a minimal inference that

this reassignment was caused by discrimination and does not allege facts that lead to such an

inference.  *See Richardson*, 180 F.3d at 440.  Unlike the 2014 reassignments, Plaintiff does not

even allege that he was replaced in the EPU by someone outside of his protected class.  He also

does not allege that the other employees who were transferred out of the EPU to the around the

same time are members of his protected class.  And while the fact that these other employees

also had discrimination complaints might lead to a minimal inference of retaliatory intent, it does

not lead to a minimal inference of discriminatory intent.  Plaintiff's Title VII hostile work

environment claim must be dismissed.

## F.     These Dismissals Are with Prejudice and the Court Declines Supplemental Jurisdiction Over the Remaining State and Local Claims

Plaintiff was given an opportunity to amend his Complaint following Defendants' filing

of their initial motion to dismiss.  *See* Individual Rule 3.F.  Moreover, Plaintiff has not sought to

make any amendment requests in the face of Defendants' arguments. *See Gallop v. Cheney*, 642

F.3d 364, 369 (2d Cir. 2011) ("While leave to amend under the Federal Rules of Civil Procedure

is 'freely granted,' see Fed. R. Civ. P. 15(a), no court can be said to have erred in failing to grant

a request that was not made.").  Therefore, the above dismissals are with prejudice.

All of Plaintiff's federal claims are dismissed.  The Court further declines supplemental

jurisdiction over the remaining state and local law claims.  See *In re Merrill Lynch Ltd. P'ships*

*Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) (noting that "when the federal claims are

dismissed the 'state claims should be dismissed as well'") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (explaining that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims").  The Court finds no reason to deviate from that normal practice here.  Because "the Court has not yet invested resources necessary to resolve [these] claims," the Court declines to exercise supplemental jurisdiction over Plaintiff's state and local law claims.  *Vuona v. Merrill Lynch & Co., Inc.*, 919 F. Supp. 2d 359, 393-94 (S.D.N.Y. 2013).  They are dismissed without prejudice.

## IV.   CONCLUSION

For the reasons articulated above, Defendants' motion to dismiss is GRANTED.  The federal claims are dismissed with prejudice and the state law claims dismissed without prejudice. The Clerk of Court is respectfully directed to enter judgment and to close this case.

This resolves Dkt. No. 35.

SO ORDERED.

Dated: June 1, 2020
      New York, New York

_____
ALISON J. NATHAN
United States District Judge